McCASLIN MACHINE COMPANY, Appellant, *v.* GEORGE W. McCASLIN, Respondent.

*Contract — to assign future inventions — what is covered by — proof by experts that a prior drawing was essentially the same as a patented invention.*

An imperfect invention, resting in theory and not so far perfected as to be patentable, but which is subsequently perfected by the inventor, is not embraced within a covenant by the terms of which the inventor has bound himself, during the term of his employment, to assign to a corporation any improvement upon or new method of making any machine or machinery relating to or to be used in making a chain conveyor owned by the corporation.

Upon the trial of an action brought to compel an assignment of patents issued to an inventor, and which a corporation claimed under the covenant above mentioned, it appeared that while the defendant was employed by the plaintiff he made a drawing representing certain proposed improvements in chain conveyors, and the plaintiff, after introducing the drawing, proposed to prove by an expert witness the points of similarity between the improvements described in the drawing and those shown in the claim upon which the patents were issued, but the evidence was excluded.

*Held,* that the evidence was proper; that mechanical experts might be permitted, except in cases of a very simple character where such testimony was unnecessary, to describe the differences and similarities of inventions shown by different drawings, claims and models.

APPEAL by the plaintiff, the McCaslin Machine Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 25th day of July, 1894, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits; also, from the decision of said Special Term denying the plaintiff's motion made at the trial for leave to bring in additional parties; also, from an order entered in said clerk's office on the 20th day of July, 1894, granting an extra allowance to the defendant, and also from an order made at the New York Special Term and entered in said clerk's office on the 27th day of May, 1895, denying the plaintiff's motion for a new trial on the ground of newly-discovered evidence.

This action was begun February 16, 1893, to compel the defendant to assign to the plaintiff two letters patent, No. 486,789 and No. 486,809, issued by the United States to the defendant February 22, 1892, for certain "improvements in conveyers," to compel the defendant to account for the rents and profits received under said letters, perpetually to enjoin defendant from incumbering or assigning said letters and for the recovery of damages.

October 20, 1888, the plaintiff was incorporated with a capital stock of $20,000 under the statutes of this State by Charles W. Hunt, John Allen, Charles C. King, George Martin Luther and George W. McCaslin for the purpose of manufacturing chain conveyers for conveying coal, grain and such articles. December 8, 1885, letters patent No. 331,961 were granted by the United States to William Griesser for a new and useful conveyer. August 7, 1888, letters patent No. 387,241 were granted to George W. McCaslin for an improved con-

veyer. August 20, 1889, letters patent No. 409,330 and No. 409,612 were granted to 'George W. McCaslin for improved conveyers, which four patents were assigned to the plaintiff. October 27, 1888, the persons who organized the corporation entered into a contract, of which the following is a copy:

"For and in consideration of one dollar, each to the other of us in hand paid, and in consideration also of the sum of one dollar to each of us paid by the McCaslin Machine Company, we do hereby severally agree that if we, or either of us, shall (during the time we shall be interested as stockholders, trustees, officers or employees of the McCaslin Machine Company) invent or discover any improvement upon or new method of making any machine or machinery relating to or to be used in making the chain conveyer now owned and used by said company, or any other machinery manufactured or to be manufactured by said company, that we will at once assign the invention or discovery, and any application for patents, and any patents issued thereon, to said company.

"Dated *October* 27, 1888."

Upon the organization of the corporation the defendant became and remained a shareholder therein until January, 1891, and was employed as its general manager from the date of its organization until May 19, 1891, when he resigned. November 22, 1892, letters patent No. 486,789 were issued by the United States to the defendant, upon his application, for "certain improvements in conveyers," and on the same day (November 22, 1892) letters patent No. 486,809 were issued by the United States to the defendant, upon his application, for "certain improvements in conveyers."

It is alleged in the complaint that the inventions secured by these letters patent were devised and made by the defendant while he was a stockholder and employee of the plaintiff, and that they and all the rights secured by the letters belonged to the plaintiff. The defendant denies this allegation in his answer, and alleges that the inventions secured by the letters were made after he ceased to be a shareholder in and an employee of the plaintiff. February 11, 1893, the defendant assigned said two letters patent to Robert McCaslin, in consideration of $2,000, which assignment was recorded in the United States Patent Office May 19, 1893, and Robert McCaslin in May, 1893, assigned said letters patent to the McCaslin Conveyer and Transfer Company, of Cleveland, Ohio.

*Antonio Knauth,* for the appellant.

*Thomas Ewing, Jr.,* for the respondent.

FOLLETT, J.:

The important issues of fact contested before the Special Term were: (1) Whether the inventions described in the letters patent were made by defendant while in plaintiff's service; (2) whether the inventions were an "improvement upon or new method of making any machine or machinery relating to or to be used in making the chain conveyer now owned and used by said company, or any other machinery manufactured, or to be manufactured, by said company," and so within the terms of the contract. Both of these issues were found in favor of the defendant, and if they were well found, that is an end of the case, unless errors were committed in the reception or rejection of evidence.

To make a case against the defendant it was necessary to establish that while in the plaintiff's service he so far developed the inventions subsequently patented that they were substantially perfected. While it was not necessary to show that all of the minute details had been worked out, it was necessary to show that the subsequent claims made by the defendant, and recognized as new and patentable by the Patent Office, could have been readily understood and applied. An imperfect invention resting in theory, a mere conception, and not so far perfected as to be patentable, which the defendant subsequently perfected, is not embraced within the contract. (*Reed* v. *Cutter,* 1 Story C. C. R. 590; *Christie* v. *Seybold,* 6 U. S. C. C. App. 520.)

While the defendant was in the employment of the plaintiff he made a drawing representing certain proposed improvements in conveyers, which, on the trial of this action, was introduced in evidence by the plaintiff for the purpose of showing the identity of the improvements shown by the drawing with those patented under the letters patent. For the purpose of making it plain that the improvements described in the drawing and those subsequently patented were substantially the same in principle, the plaintiff called an expert and proposed to show by him wherein the improvements described in the drawing and in the claim upon which the patents were issued were alike. To this the defendant objected, and the objection was sus-

First Department, November Term, 1895.    [Vol. 90.

tained and an exception taken. The court ruled that it would not permit an expert to testify as to what the sketch indicated. In this we think the court erred. It is competent to permit mechanical experts to describe the differences and similarities of inventions shown by different drawings, claims and models. This rule is so well settled that it does not require the citation of many authorities. (*Bischoff* v. *Wethered*, 9 Wall. 812; *Spring Co.* v. *Edgar*, 99 U. S. 645; *Allen* v. *Blunt*, 3 Story C. C. R. 742.)

Of course, cases may arise so simple in their character that the testimony of experts may not be required to make the similarities and differences between various patents, claims and drawings plain to the mind of a judge or jury; but this, we think, was not such a case, and that the court erred in rejecting this class of evidence.

The judgment should be reversed, with costs to the plaintiff to abide the event. By the reversal of the judgment it becomes unnecessary to consider the appeal from the order denying a motion for a new trial on the ground of newly-discovered evidence, which falls with the reversal, and neither party has any further interest in it or the appeal therefrom, except the costs which might be awarded, and would not exceed twenty dollars and disbursements, and the order is set aside, without costs to either party.

Van Brunt, P. J., and Parker, J., concurred.

Judgment and order reversed, new trial ordered, costs to plaintiff to abide event. Order denying motion for a new trial, on the ground of newly-discovered evidence, set aside, without costs.